## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FIREARMS IMPORT/EXPORT           )
ROUNDTABLE TRADE GROUP           )
and TIMOTHY BERO,                )
                                 )
Plaintiffs,                      )          Case No. 1:11-CV-00547-ABJ
                                 )
v.                               )
                                 )
KENNETH MELSON, Acting Director of   )
the Bureau of Alcohol, Tobacco, Firearms  )
and Explosives; THE BUREAU OF    )
ALCOHOL, TOBACCO, FIREARMS AND   )
EXPLOSIVES; ERIC HOLDER, Attorney  )
General of the United States; and THE  )
UNITED STATES DEPARTMENT OF      )
JUSTICE,                         )
                                 )
Defendants.                      )

## DEFENDANTS' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Now comes the United States of America on behalf of the Acting Director of the Bureau

of Alcohol, Tobacco, Firearms and Explosives; the Bureau of Alcohol, Tobacco, Firearms and

Explosives; the Attorney General of the United States; and the U.S. Department of Justice, by

undersigned counsel, and respectfully moves this Court to dismiss this action for lack of subject

matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim

upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) or, in the

alternative, to enter summary judgment in favor of Defendants pursuant to Federal Rule of Civil

Procedure 56.  The basis for this motion is set forth in the attached Memorandum of Law in

Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.  A

proposed order is also submitted herewith.

Dated: June 30, 2011                          Respectfully submitted,

                                              TONY WEST
                                              Assistant Attorney General

                                              RONALD C. MACHEN JR.
                                              United States Attorney

                                              SANDRA SCHRAIBMAN
                                              Assistant Director
                                              Federal Programs Branch

                                                 /s/ Andrew Zee
                                              M. ANDREW ZEE (CA Bar #272510)
                                              Trial Attorney
                                              Federal Programs Branch
                                              U.S. Department of Justice, Civil Division
                                              20 Massachusetts Avenue NW, Room 7225
                                              Washington, DC  20530
                                              Telephone:  (202) 305-8648
                                              Fax:  (202) 616-8470
                                              Email:  m.andrew.zee@usdoj.gov

                                              *Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FIREARMS IMPORT/EXPORT | ) | |
| ROUNDTABLE TRADE GROUP | ) | |
| and TIMOTHY BERO, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:11-CV-00547-ABJ |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH MELSON, Acting Director of | ) | |
| the Bureau of Alcohol, Tobacco, Firearms | ) | |
| and Explosives; THE BUREAU OF | ) | |
| ALCOHOL, TOBACCO, FIREARMS, AND | ) | |
| EXPLOSIVES; ERIC HOLDER, Attorney | ) | |
| General of the United States; and THE | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................1

STATUTORY BACKGROUND ..........................................................................2

REGULATORY HISTORY OF § 925(d)(3)........................................................5

PLAINTIFFS' COMPLAINT...............................................................................7

STANDARD OF REVIEW ..................................................................................9

ARGUMENT ......................................................................................................10

I.    ATF'S OPEN LETTER DID NOT VIOLATE THE
      ADMINISTRATIVE PROCEDURE ACT'S
      NOTICE-AND-COMMENT REQUIREMENT ........................................10

      A.    The July 2005 Open Letter is an interpretive rule that is not subject
            to the notice-and-comment requirements of the APA .................................11

      B.    Notice and comment are not required whenever an agency's
            interpretation affects a party's rights ........................................................13

      C.    ATF's shift in interpretation of § 925(d)(3) does not render the
            Open Letter a legislative rule ....................................................................14

      D.    There is no inconsistency between ATF's interpretation of
            § 925(d)(3) and other GCA provisions or ATF regulations ......................15

II.   ATF's DENIAL OF BERO'S PERMIT APPLICATIONS WAS NOT
      ARBITRARY AND CAPRICIOUS UNDER THE ADMINISTRATIVE
      PROCEDURE ACT....................................................................................19

      A.    Bero's applications would have been denied under ATF's
            pre-2005 interpretation of § 925(d)(3), and the decision is
            therefore not an arbitrary and capricious departure from ATF's
            precedent ...................................................................................................20

      B.    ATF's interpretation of § 925(d)(3) is not erroneous.............................20

            1.    *Chevron* Step One: Congress has Spoken Directly to
                  the Precise Question at Issue........................................................21

a.      The text of § 925(d)(3) has a plain and unambiguous meaning.....................................................................21

b.      Resort to the legislative history cited by Plaintiffs is unnecessary and, in any event, that legislative history is not inconsistent with ATF's interpretation.................................23

2.     *Chevron* Step Two: ATF's interpretation of § 925(d)(3) is a permissible construction of the statute........................................................28

III.    PLAINTIFFS' CONSTITUTIONAL CLAIMS LACK MERIT........................................29

A.     Plaintiffs' claims under the Due Process Clause are meritless ............................29

B.     This Court lacks jurisdiction over Plaintiffs' takings claim, and, in any event, the claim lacks merit...............................................................32

1.     Plaintiffs' takings claim is not properly before this Court ................................................................................32

2.     Even if this Court had jurisdiction, Plaintiffs' takings claim is meritless ...............................................................33

CONCLUSION.........................................................................................................35

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                          **PAGE**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ................................................................... 19

*Adams v. Hinchman*,
   154 F.3d 420 (D.C. Cir. 1998) ................................................... 34

*Ala. Educ. Ass'n v. Chao*,
   455 F.3d 386 (D.C. Cir. 2006) ................................................... 32

*Ala. Power Co. v. EPA*,
   40 F.3d 450 (D.C. Cir. 1994) ..................................................... 28

*Am. Mining Cong. v. Mine Safety & Health Admin.*,
   995 F.2d 1106 (D.C. Cir. 1993) .................................................. 11

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Service*,
   707 F.2d 548 (D.C. Cir. 1983) .............................................. 12, 14

*Barnhart v. Sigmon Coal Co.*,
   534 U.S. 438 (2002) ............................................................. 22, 25

*Bi-Metallic Investment Co. v. State Bd. of Equalization*,
   239 U.S. 441 (1915) ................................................................... 30

*Cabais v. Egger*,
   690 F.2d 234 (D.C. Cir. 1982) ................................................... 14

*Cent. Tex. Tel. Co-op., Inc. v. FCC*,
   402 F.3d 205 (D.C. Cir. 2005) .............................................. 15, 16

*Chamber of Commerce of U.S. v. FEC*,
   76 F.3d 1234 (D.C. Cir. 1996) ................................................... 21

*Chevron USA Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ............................................................ passim

*Cnty. Bd. of Arlington v. Dep't of Transp.*,
   705 F. Supp. 2d 25 (D.D.C.  2010) ............................................... 9

*Cobell v. Norton*,
   428 F.3d 1070 (D.C. Cir. 2005) .................................................. 25

iii

*Consumer Elecs. Ass'n v. FCC*,
    347 F.3d 291 (D.C. Cir. 2003) .......................................................................... 24

*Demko v. United States*,
    216 F.3d 1049 (Fed. Cir. 2000) ......................................................................... 3

*Dep't of Housing & Urban Dev. v. Rucker*,
    535 U.S. 125 (2002) ........................................................................................ 22

*Eagle Broad. Grp. v. FCC*,
    563 F.3d 543 (D.C. Cir. 2009) .......................................................................... 20

*Eastern Enters. v. Apfel*,
    524 U.S. 498 (1998) ........................................................................................ 34

*Ford v. Mabus*,
    629 F.3d 198 (D.C. Cir. 2010) .......................................................................... 23

*Gen. Motors Corp. v. Ruckelshaus*,
    742 F.2d 1561 (D.C. Cir. 1984) ......................................................................... 13

*General Instrument Corp. v. F.C.C.*,
    213 F.3d 724 (D.C. Cir. 2000) .......................................................................... 25

*Gerlich v. Dep't of Justice*,
    659 F. Supp. 2d 1 (D.D.C. 2009) ....................................................................... 9

*Graceway Pharms., Inc. v. Sebelius*
    --- F.Supp.2d ---, 2011 WL 1753801 (D.D.C. 2011).......................................10, 11

*Gun South, Inc. v. Brady*,
    877 F.2d 858 (11th Cir. 1989) ..................................................................... 3, 35

*Hawkeye Commodity Promotions, Inc. v. Vilsack*,
    486 F.3d 430 (8th Cir. 2007) ........................................................................... 35

*Ind. Michigan Power Co. v. Dep't of Energy*,
    88 F.3d 1272 (D.C. Cir. 1996) .......................................................................... 23

*Initiative & Referendum Inst. v. U.S. Postal Service*,
    417 F.3d 1299 (D.C. Cir. 2005) ................................................................... 30, 31

*Jama v. Immigration & Customs Enforcement*,
    543 U.S. 335 (2005)........................................................................................ 32

iv

*Leveris v. England*,
249 F. Supp. 2d 1 (D. Me. 2003) ............................................................. 33

*Marshall v. BOP*,
518 F. Supp. 2d 190 (D.D.C. 2007) ........................................................... 9

*Metro. Sch. Dist. v. Davila*,
969 F.2d 485 (7th Cir. 1992) ........................................................... 12, 15

*Minn. State Bd. for Cmty. Colleges v. Knight*,
465 U.S. 271 (1984) ................................................................................ 30

*Mitchell Arms, Inc. v. United States*,
7 F.3d 212 (Fed. Cir. 1993) .................................................................... 35

*Nat'l Cable & Telecomm. Ass'n v. FCC*,
567 F.3d 659 (D.C. Cir. 2009) ............................................................... 24

*Nat'l Rifle Ass'n of Am., Inc. v. Reno*,
216 F.3d 122 (D.C. Cir. 2000) ............................................................... 29

*Natural Res. Def. Council, Inc. v. EPA.*,
489 F.3d 1250 (D.C. Cir. 2007) ............................................................. 23

*Natural Res. Def. Council, Inc. v. Costle*,
568 F.2d 1369 (D.C. Cir. 1977) ............................................................. 23

*New York v. FERC*,
535 U.S. 1 (2002) .................................................................................... 26

*Nixon v. Mo. Municipal League*,
541 U.S. 125 (2004) ................................................................................ 23

*Orengo Caraballo v. Reich*,
11 F.3d 186 (D.C. Cir. 1993) ................................................................. 13

*Preseault v. ICC*,
494 U.S. 1 (1990) .............................................................................. 33, 34

*Prod. Tool Corp. v. Dep't of Labor*,
688 F.2d 1161 (7th Cir. 1982) ............................................................... 12

*Pub. Utils. Comm'n v. Attleboro Steam Co.*,
273 U.S. 83 (1927) .................................................................................. 26

*Robinson v. Shell Oil Co.*,
   519 U.S. 337 (1997).......................................................................................... 22

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984).......................................................................................... 34

*Shays v. FEC*,
   424 F. Supp. 2d 100 (D.D.C. 2006) ................................................................ 10

*Sherley v. Sebelius*,
   --- F.3d ---, 2011 WL 1599685 (D.C. Cir. 2011)...........................................21

*Sheppard v. Sullivan*,
   906 F.2d 756 (D.C. Cir. 1990) ........................................................................ 19

*Small v. United States,*
   544 U.S. 385 (2005)..........................................................................................23

*Springfield, Inc. v. Buckles*,
   292 F.3d 813 (D.C. Cir. 2002) .......................................................................... 3

*Syncor Int'l Corp. v. Shalala*,
   127 F.3d 90 (D.C. Cir. 1997) .................................................................... 12, 15

*United States v. Bean*,
   537 U.S. 71 (2002)........................................................................................... 10

*United States v. Gonzales*,
   520 U.S. 1 (1997).............................................................................................. 22

*United States v. Palmer*,
   3 Wheat. 610 (1818) ........................................................................................ 23

*Util. Air Regulatory Group v. EPA*,
   320 F.3d 272 (D.C. Cir. 2003) ........................................................................ 19

*Village of Barrington, Ill. v. Surface Transp. Bd.*,
   636 F.3d 650 (D.C. Cir. 2011) ........................................................................ 29

*Virginia v. Hicks*,
   539 U.S. 113 (2003)......................................................................................... 31

*Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*,
   473 U.S. 172 (1985).......................................................................................... 33

*Wis. Valley Improvement v. FERC*,
    236 F.3d 738 (D.C. Cir. 2001) ........................................................................... 33, 34

**STATUTES**

5 U.S.C. § 553 ................................................................................................. passim

5 U.S.C. § 706 ................................................................................................. 10, 20

16 U.S.C. § 824............................................................................................................26

18 U.S.C. § 921................................................................................................... 4

18 U.S.C. § 922.......................................................................................... 2, 17, 18, 23

18 U.S.C. § 925………………………………………………………………..passim

18 U.S.C. § 926 ................................................................................................. 12

26 U.S.C. § 5845 ............................................................................................... 3

28 U.S.C. § 1491 ............................................................................................... 34

28 U.S.C. § 2401 ............................................................................................... 15

28 U.S.C. § 599A .............................................................................................. 2

28 U.S.C. § 1346 ............................................................................................... 33

Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986)................................. 4

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 ................................. 2

Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 ......................................... 2

National Firearms Act, Pub. L. No. 73-474, 48 Stat. 1236 (1934)................................. 3

**RULES AND REGULATIONS**

Fed. R. Civ. P. 56.................................................................................................. 10

27 C.F.R. § 478.112.................................................................................... 15, 16, 17

27 C.F.R. § 478.39.......................................................................................... 17, 18

28 C.F.R. § 0.130 ................................................................................................................. 3, 12

Commerce in Firearms and Ammunition, T.D. ATF-270, 53 Fed. Reg. 10,480, (Mar.
   31, 1988) ............................................................................................................................ 5

Temporary Rule, T.D. ATF-241, 51 Fed. Reg. 39,612 (Oct. 29, 1986)......................................5

## LEGISLATIVE HISTORY

131 Cong. Rec. 18,195 (1985) (statement of Sen. Kennedy)......................................................25

131 Cong. Rec. 17,001 (1985) (statement of Sen. McClure)......................................................25

131 Cong. Rec. 18,184 (1985) (statement of Sen. Matsunaga)...................................................25

132 Cong. Rec. 6843 (1986) (statement of Rep. Volkmer) ....................................................... 25

H.R. Rep. No. 99-495 (1985)..................................................................................................... 25

## INTRODUCTION

A provision of the Gun Control Act of 1968 prohibits the importation of the frame, receiver, or barrel of a firearm if the firearm, when assembled, may not be imported into the United States.  Prior to July 2005, the federal agency charged with administering that provision, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), generally prohibited importation of these components but allowed an exception for frames, receivers, or barrels that were being imported to repair or replace those components on firearms that were already lawfully owned in the United States.  After seeking the views of the Office of Legal Counsel in the Department of Justice, ATF determined that the statute did not permit an exception of this kind and informed licensed importers of its determination in an Open Letter dated July 13, 2005.  Since the issuance of that letter, ATF has denied any application to import the specified component parts into the United States if they are from a firearm which, if assembled, is not authorized for import.

Plaintiffs, an individual firearms importer and an industry trade group, have alleged claims under the U.S. Constitution and the Administrative Procedure Act ("APA").  Each of their claims is without merit.  The July 2005 Open Letter was an interpretive rule that was not subject to the APA's notice-and-comment requirements.  The prior policy was inconsistent with the terms of the statute and Plaintiffs offer no basis for seeking to reinstate that mistaken view.  Thus, ATF's denial of Plaintiffs' import applications is not arbitrary and capricious, nor is it, as Plaintiffs allege, a violation of the Due Process Clause.  As for Plaintiffs' claim under the Takings Clause, the Court lacks jurisdiction to consider it, and, even if the Court had jurisdiction, the claim lacks merit.

Accordingly, the Complaint should be dismissed in its entirety or, in the alternative, summary judgment should be entered in favor of Defendants.

## STATUTORY BACKGROUND

The Gun Control Act of 1968 ("GCA")[1] broadly restricts the importation of firearms into the United States.  Title 18, United States Code, Section 922(*l*) makes it "unlawful for any person knowingly to import or bring into the United States or any possession thereof any firearm or ammunition," except as provided in 18 U.S.C. § 925(d).  *See* 18 U.S.C. § 922(*l*).  Section 925(d) provides that the Attorney General "shall authorize" the importation of a firearm if it falls within any of four specific categories.[2]  Three of these categories are not at issue in this case: a firearm imported for scientific or research purposes, or for certain military training exercises or competitions, *see id.* § 925(d)(1); an unserviceable firearm that is a curio or museum piece, *id.* § 925(d)(2); or a firearm that had been previously taken out of the United States by the importer, *id.* § 925(d)(4).  The type of firearm relevant to this case is a firearm that

> is of a type that does not fall within the definition of a firearm as defined in section 5845(a) of the Internal Revenue Code of 1986 and is generally recognized as particularly suitable for or readily adaptable to sporting purposes, excluding surplus military firearms . . . .

18 U.S.C. § 925(d)(3).

Importable firearms in this category are known within the firearms industry and community as "sporting purpose" firearms.   Sporting purpose firearms are initially defined in

---

[1] Pub. L. No. 90-618, 82 Stat. 1213 (codified as amended at 18 U.S.C. § 921 *et seq.*)

[2] From 1968 through 2002, while ATF resided within the Treasury Department, the Secretary of the Treasury, rather than the Attorney General, maintained the authority to administer the GCA. In § 1111 of the Homeland Security Act of 2002, Congress transferred ATF from the Department of the Treasury to the Department of Justice, effective January 23, 2003.  *See* Pub. L. 107-296, 116 Stat. 2135, 2274-75 (codified at 28 U.S.C. § 599A).   As a housekeeping measure, Congress replaced all references to the "Secretary" in the GCA with the "Attorney General."  *Id.* § 1112(f)(6), 116 Stat. at 2276.

§ 925(d)(3) to exclude "firearms" as defined in § 5845(a) of the Internal Revenue Code of 1986.

Section 5845(a) is a provision of the National Firearms Act ("NFA")[3] that defines a "firearm" to

include sawed-off shotguns, short-barreled rifles, machineguns, silencers, destructive devices,

and certain concealable weapons.[4] *See* 26 U.S.C. § 5845(a).  Sporting purpose firearms also

exclude surplus military firearms, which may be characterized as firearms that previously

belonged to any regular or irregular military force.[5]  Finally, to qualify as a sporting purpose

firearm, a firearm must not only be neither a NFA firearm nor a surplus military firearm, but

must also be "generally recognized as particularly suitable for or readily adaptable to sporting

purposes," *i.e.*, it must pass the sporting purpose test.  The determination of whether a firearm

passes the sporting purpose test is reserved to the discretion of the Attorney General, who has

delegated his authority to ATF.[6]  *See Gun South, Inc. v. Brady*, 877 F.2d 858, 863 (11th Cir.

1989) (noting that ATF "must decide whether a firearm is generally suitable for a sporting

purpose"); *see also, e.g.*, *Springfield, Inc. v. Buckles*, 292 F.3d 813, 815 (D.C. Cir. 2002); *Demko

v. United States*, 216 F.3d 1049, 1054 (Fed. Cir. 2000).

    There are thus three independent reasons why a particular firearm could be barred from

importation under § 925(d)(3): (1) it is an NFA firearm; (2) it is a surplus military firearm; or (3)

---

[3] Pub. L. No. 73-474, 48 Stat. 1236 (1934) (codified as amended at 26 U.S.C. § 5801 *et seq.*).

[4] A NFA "firearm" is distinct from a GCA "firearm," which is defined at 18 U.S.C. § 921(a)(3).

[5] *See* ATF Guidebook, Importation & Verification of Firearms, Ammunition, and Implements of War, Surplus Military, *available at* http://www.atf.gov/firearms/guides/importation-verification/general-information-surplus-military.html (last visited June 30, 2011).

[6] The Attorney General has delegated to the Director of ATF the authority to "[i]nvestigate, administer, and enforce the laws related to alcohol, tobacco, firearms, explosives, and arson, and perform other duties as assigned by the Attorney General, including exercising the functions and powers of the Attorney General" under the GCA.  28 C.F.R. § 0.130(a).

it fails the sporting purpose test.[7]  But § 925(d)(3) does not stop there.  In May 1986, Congress

amended certain provisions of the GCA, including § 925(d)(3), by passing the Firearms Owners'

Protection Act ("FOPA").[8]  The FOPA amendment added the following language to § 925(d)(3),

highlighted in bold:

> is of a type that does not fall within the definition of a firearm as
> defined in section 5845(a) of the Internal Revenue Code of 1986
> and is generally recognized as particularly suitable for or readily
> adaptable to sporting purposes, excluding surplus military
> firearms**, except in any case where the Attorney General has
> not authorized the importation of the firearm pursuant to this
> paragraph, it shall be unlawful to import any frame, receiver,
> or barrel of such firearm which would be prohibited if
> assembled . . . .**

The FOPA thus made it "unlawful to import any frame, receiver, or barrel"[9] of any assembled

firearm that is barred from importation for any of the three reasons provided in § 925(d)(3).[10]  In

effect, if a firearm does not qualify for importation under § 925(d)(3), then "any frame, receiver,

or barrel" of that firearm also fails to qualify for importation.  The language added by the FOPA

---

[7] A single firearm could meet more than one of these prohibiting criteria.

[8] Pub. L. No. 99-308, 100 Stat. 449 (1986).

[9] The GCA defines a "firearm" to include frames and receivers but not barrels.  *See* 18 U.S.C.
§ 921(a)(3)(B).  This Memorandum will sometimes refer to frames, receiver, or barrels as
"components" or "parts."

[10] The FOPA also replaced the then-current "may authorize" language of § 925(d) with "shall
authorize," eliminating ATF's discretion (which, at the time, was delegated from the Secretary of
the Treasury) to withhold import authorization if a firearm fell within one of the four enumerated
categories.  *See* Pub. L. No. 99-308, § 105(2)(A), 100 Stat. 449, 459.

amendment prevents an importer from circumventing the import restrictions on assembled firearms by simply breaking that firearm down into its component pieces for import.[11]

## REGULATORY HISTORY OF § 925(d)(3)

In October 1986, to implement the FOPA amendment to § 925(d)(3), ATF issued a Temporary Rule, requiring an importer to show that the frame, receiver, or barrel that he wanted to import was from a firearm that qualified for import under § 925(d)(3).[12]  *See* Commerce in Firearms and Ammunition; Temporary Rule, T.D. ATF-241, 51 Fed. Reg. 39,612, 39,622, at ¶ 39, § 178.112(b)(7)(iv) (Oct. 29, 1986).  Under this regulatory scheme, the frame, receiver, or barrel of any non-importable firearm, regardless of type, was prohibited from importation.  In March 1988, ATF issued a Final Rule.  In the preamble to this Final Rule, ATF noted that in response to comments it had received, "several changes were made in the regulations [contained in the 1986 Temporary Rule] to preclude the importation of barrels only if they are for nonsporting handguns."  Commerce in Firearms and Ammunition, T.D. ATF-270, 53 Fed. Reg. 10,480, 10,485 (Mar. 31, 1988).  ATF thereby interpreted the non-sporting gun barrel import prohibition to apply only to barrels for non-importable handguns.  This interpretation was generally consistent with the fact that, as of 1988, ATF had applied the sporting purpose test to

---

[11] The GCA contains an express exception to § 925(d)(3)'s importation prohibition if the component parts are for state or federal government use.  *See* 18 U.S.C. § 925(a)(1).

[12] The implementing regulation is presently codified, as amended, at 27 C.F.R. § 478.112.

prohibit the importation of a long gun on only two occasions.[13]  In other words, ATF did not interpret § 925(d)(3) to prohibit importation of barrels for non-sporting (and, hence, non-importable) long guns.[14]  This interpretation of § 925(d)(3) was in effect until 2001.

In April 2001, ATF provided notice in its Federal Firearms Licensee (FFL) Newsletter that it had changed its interpretation of § 925(d)(3).[15]  ECF No. 6, Administrative Record ("AR") at 1, 5-6.  Under the 2001 interpretation, importing the frame, receiver, or barrel of a non-importable handgun remained prohibited.  ATF also determined that importing the frame, receiver, or barrel of a non-importable long gun would not be permitted unless the component was being imported solely for purposes of repair or replacement of a lawfully owned firearm already in the United States.  *Id.* at 5.  In other words, a purpose-dependent exception to § 925(d)(3)'s import ban was created: frames, receivers, or barrels from non-sporting long guns could be imported so long as they were imported for repair or replacement of a firearm lawfully owned in the United States.

During the course of proposing additional ATF regulations, ATF solicited the legal opinion of the Office of Legal Counsel in the Department of Justice ("OLC") on the appropriate

---

[13] *See* Report and Recommendation of the ATF Working Group on the Importability of Certain Semiautomatic Rifles 4 (1989) (the "1989 Study"), *available at* http://www.atf.gov/firearms/ industry/july-1989-%20 importability-of-certain-semiautomatic-rifles.pdf  (last visited June 30, 2011).  The 1989 Study noted that two "combat-type" shotguns had been found to be non-sporting in 1984 and 1986.  *Id.* at 4-5.  Other than these two isolated instances, all long guns had been approved for importation so long as they were neither NFA firearms nor surplus military firearms.  *Id.* at 4.

[14] A barrel of a non-sporting long gun that was either an NFA firearm or a surplus military weapon, however, remained prohibited from importation.

[15] The FFL Newsletter is published by ATF as an information service for federal firearms licensees.

interpretation of § 925(d)(3).  *Id.* at 16-17.  OLC undertook an extensive analysis of the provision and provided ATF with an opinion (the "OLC Memorandum") concluding that the statute did not provide a basis for the exception to the importation prohibition.  *Id.* at 18-23. OLC concluded that the "repair or replacement" exception that ATF read into § 925(d)(3) was not supported by the text of the provision and that, instead, the provision erected a comprehensive ban on importing any frame, receiver, or barrel of any firearm that was itself non-importable.  *Id.* at 18-21.

On July 13, 2005, ATF issued an "Open Letter to Federally Licensed Firearms Importers and Registered Importers of U.S. Munitions Import List Articles" (the "Open Letter").  *See* ECF No. 1, Pls.' Compl. ("Compl."), Ex. E; *see also* AR at 24-26.  ATF informed licensed firearm importers of its determination "that the language of 18 U.S.C. § 925(d)(3) permits no exceptions that would allow frames, receivers or barrels for otherwise non-importable firearms to be imported into the United States."  AR at 24.  Accordingly, ATF stated that it would "no longer approve" applications to import frames, receivers, or barrels of non-importable firearms, and specifically mentioned that "[n]o exceptions to the statutory language, for example for 'repair or replacement' of existing firearms, [would] be allowed."[16]  *Id.*

### PLAINTIFFS' COMPLAINT

Plaintiff Firearms Import/Export Roundtable Trade Group ("FAIR") is a business league organization that "provide[s] importers and exporters of firearms, firearms parts, firearms

_____

[16] The Open Letter also informed importers that, as a mitigating measure, ATF would "forgo enforcement of this import restriction for 60 calendar days and allow importers holding existing permits to continue to import barrels and receivers for a period of 60 calendar days."  AR at 24. This aspect of the Open Letter is not put at issue by Plaintiffs.

accessories and ammunition with relevant and timely information regarding changes to federal, state and business dynamics" and that "work[s] to minimize business risks for entities engaged in the trade."  Compl. ¶ 1.  Plaintiff Timothy Bero is an Oregon-based importer and exporter of firearms and firearms accessories and a member of FAIR.  *Id.* ¶ 2.

In November 2010, Bero applied for permits to import barrels of firearms that would be prohibited if assembled.  Specifically, Bero sought to import 1,000 "Scorpion Machine Pistol Barrels" and 900 "MG-34 Machine Gun Barrels."  *See* AR at 27-28, 30-31; Compl., Exs. G, H. In Part 10 of his application, Bero indicated that the "Specific Purpose of Importation" for both kinds of barrels was "Resale."  AR at 27, 30.  ATF denied his applications.  Compl. ¶¶ 31-34, Exs. F, G.  By letters dated on or about January 21, 2011, Desiree M. Winger, Acting Chief of ATF's Firearms and Explosives Imports Branch, explained that the barrels were prohibited from importation under § 925(d)(3) because they were non-sporting firearm barrels.  AR at 29, 32; Compl., Ex. H.  The letters further explained that Bero could not avail himself of the § 925(a)(1) exception for state or federal government use, because his applications did not include a purchase order from an appropriate government entity.  AR at 29, 32.

On March 14, 2011, nearly six years after ATF issued the Open Letter and began implementing its current interpretation of § 925(d)(3), Plaintiffs filed an eight-count Complaint against ATF, DOJ, U.S. Attorney General Eric Holder, and ATF Acting Director Kenneth

Melson[17] (collectively, Defendants or ATF).  Plaintiffs raise two challenges under the

Administrative Procedure Act, 5 U.S.C. § 553 *et seq.*, and two challenges under the U.S.

Constitution.  First, Plaintiffs claim that Defendants failed to provide notice and an opportunity

to comment prior to issuing the 2005 Open Letter.  Compl. ¶¶ 48-158 (Cts. 1-2).  Second,

Plaintiffs claim that ATF's denial of Bero's permit applications was arbitrary and capricious

because it was based on an erroneous interpretation of the GCA.  *Id.*  ¶¶ 159-271 (Cts. 3-4).  In

addition, Plaintiffs allege a mix of constitutional violations, including a claim that ATF's

interpretation violates the Due Process Clause of the Fifth Amendment, *id.* ¶¶ 272-383 (Cts. 5-6),

and constitutes an impermissible taking in violation of the Takings Clause, *id.* ¶¶ 384-485 (Cts.

7-8).  Plaintiffs seek declaratory and injunctive relief on each of their claims.  As demonstrated

below, none of Plaintiffs' claims has merit and the Complaint should therefore be dismissed in

its entirety.  Should the Court decide this case by review of the contemporaneously filed

administrative record, Defendants submit that no genuine issue of material fact exists and that

summary judgment should accordingly be entered in their favor.

## STANDARD OF REVIEW

The Administrative Procedure Act governs judicial review of agency action and provides

the standard for review of ATF's decisions here.  Under the APA, judicial review is usually

---

[17] Plaintiffs purport to sue Defendants Kenneth Melson and Eric Holder in their individual
capacities, *see* Compl. ¶¶ 3, 6.  Where a complainant seeks only declaratory or injunctive relief,
as Plaintiffs do in this case, a government official cannot be sued in his or her individual
capacity.  *See Cnty. Bd. of Arlington v. U.S. Dep't of Transp.*, 705 F. Supp. 2d 25, 29 (D.D.C.
2010); *Gerlich v. U.S. Dep't of Justice*, 659 F. Supp. 2d 1, 19 n.20 (D.D.C. 2009); *Marshall v.
BOP*, 518 F. Supp. 2d 190 (D.D.C. 2007).  Therefore, Plaintiffs have failed to properly state a
claim against Melson and Holder in their individual capacities, and all allegations purporting to
be against them in their individual capacities must be dismissed in their entirety.

limited to determining whether the agency acted in a manner that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also United States v. Bean*, 537 U.S. 71, 77 (2002).

This motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). To the extent that the Court must consider the administrative record in addition to the face of the complaint, Defendants move, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. "Summary judgment 'is an appropriate procedure when a court reviews an agency's administrative record.'" *Graceway Pharmaceuticals, Inc. v. Sebelius*, --- F. Supp. 2d ----, 2011 WL 1753801, at *5 (D.D.C. 2011) (quoting *Shays v. FEC*, 424 F. Supp. 2d 100, 109-10 (D.D.C. 2006)).

A party is entitled to summary judgment where the administrative record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addition, when the "case 'involves a challenge to a final administrative action, the Court's review is limited to the administrative record.'" *Graceway Pharms.*, 2010 WL 1753801, at *5 (quoting *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)).

## ARGUMENT

### I.    ATF'S OPEN LETTER DID NOT VIOLATE THE ADMINISTRATIVE PROCEDURE ACT'S NOTICE-AND-COMMENT REQUIREMENT

Plaintiffs assert that ATF violated the APA because it did not "use formal rule making procedures" before issuing the July 2005 Open Letter. Compl. ¶ 95. According to Plaintiffs, prior to issuing its interpretation of § 925(d)(3), ATF was required under 5 U.S.C. § 553 "to provide notice of a proposed rule change and accept and consider comments from interested

10

persons." *Id.* ¶ 99.  Plaintiffs are mistaken.  Under the APA, before a proposed rule becomes

effective, an agency must give notice of a proposed rulemaking and must provide the public with

an opportunity to comment.  5 U.S.C. § 553(b), (c).  By the statute's own terms, however, the

notice-and-comment requirements of § 553 "do[] not apply . . . to interpretative rules, general

statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C.

§ 553(b)(3)(A).  Thus, unlike a "substantive" rule or, as it is sometimes called, a "legislative"

rule, an interpretive rule need not comply with the notice-and-comment procedures of § 553(b)

and (c).  Because the Open Letter issued by ATF is an interpretive rule, it is exempt from the

APA's notice-and-comment requirements, and Plaintiffs' allegation that ATF violated the APA

lacks merit.

> **A.    The July 2005 Open Letter is an interpretive rule that is not subject to the notice-and-comment requirements of the APA**

An interpretive rule is a "rule[] or statement[] issued by an agency to advise the public of

the agency's construction of the statutes and rules which it administers."  *Am. Mining Cong. v.

Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993) (quoting ATTORNEY

GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT, 30 n.3 (1947)).  A legislative or

substantive rule, on the other hand, arises "only if Congress has delegated legislative power to

the agency and if the agency intended to use that power in promulgating the rule at issue."  *Am.

Postal Workers Union, AFL-CIO v. U.S. Postal Service*, 707 F.2d 548, 558 (D.C. Cir. 1983).

The D.C. Circuit has identified the "crucial distinction" between a substantive (or legislative)

rule and an interpretive rule: "a substantive rule *modifies* or *adds* to a legal norm based on the

agency's *own authority*.  That authority flows from a congressional delegation to promulgate

substantive rules, to engage in supplementary lawmaking." *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 95 (D.C. Cir. 1997).

Here, ATF did not act pursuant to a congressional delegation of legislative power. Instead, the Open Letter "reflects [ATF's] construction of a statute that [it] has been entrusted . . . to administer" pursuant to 28 C.F.R. § 0.130(a)(1). *Syncor*, 127 F.3d at 94; *Prod. Tool Corp. v. Dep't of Labor*, 688 F.2d 1161, 1166 (7th Cir. 1982) ("It is well established that an agency charged with a duty to enforce or administer a statute has inherent authority to issue interpretive rules . . . ."). As the Seventh Circuit has stated, "[s]imply because an agency has the power to enact legislative rules does not mean that it has exercised that power." *Metro. Sch. Dist. v. Davila*, 969 F.2d 485, 492 (7th Cir. 1992). The Open Letter makes no express reference to 18 U.S.C. § 926, by which Congress delegated authority to the Attorney General to "prescribe only such rules and regulations as are necessary to carry out the provisions of this chapter," nor does it otherwise suggest that ATF is exercising the rulemaking authority granted by Congress.

The opening paragraph of the Open Letter announces its "purpose" to "provide important information to importers concerning the lawful importation of certain frames, receivers and barrels." AR at 24. The second paragraph identifies the relevant statute as 18 U.S.C. § 925(d)(3). It then explains the criteria that a firearm must meet to be authorized for importation under § 925(d)(3) (*i.e.*, a sporting purpose firearm that is neither a NFA firearm nor a surplus military firearm), and goes on to quote the relevant language of the provision relating to frames, receivers, and barrels. The third paragraph of the Open Letter provides the agency's interpretation: "ATF has determined that the language of 18 U.S.C. § 925(d)(3) permits no exceptions that would allow frames, receivers or barrels for otherwise non-importable firearms to be imported into the United States." *Id.* It then describes the practical effect of this

12

interpretation, that ATF "will no longer approve" import applications for prohibited frames, receivers, or barrels. *Id.* Finally, ATF made clear that "[n]o exceptions" to the statutory language would be allowed. *Id.*

The text of the Open Letter, alongside its stated purpose, makes clear that it is no more than a "statement seeking to interpret a statutory or regulatory term," which the D.C. Circuit has identified as the "quintessential example" of an interpretive rule. *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C. Cir. 1993); *see also Gen. Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984) (en banc) (finding a rule to be interpretive rather than substantive when the agency's justification was "comprised of reasoned statutory interpretation, with reference to the language, purpose and legislative history" of the statute). Because an agency need not provide notice and opportunity to comment before issuing an interpretive rule such as the Open Letter, Plaintiffs' claim that ATF violated § 553 must fail.

**B.    Notice and comment are not required whenever an agency's interpretation affects a party's rights**

Contrary to Plaintiffs' assertions, the APA does not require notice and comment every time that an agency "issu[es] new rules that affect Plaintiffs' rights," Compl. ¶ 95, or issues an interpretation that allegedly "has a wide ranging effect on the legal privileges and duties for Plaintiffs," *id.* ¶ 98. In other words, the fact that importers' pre-2005 ability to import certain barrels for repair or replacement purposes has been curtailed under ATF's current interpretation of the statute does not convert the Open Letter from an interpretive rule to a legislative or substantive one. "Interpretative and substantive rules may both vitally affect private interests," and the "impact of agency action is not helpful in determining whether [the] action is interpretative or substantive." *Cabais v. Egger*, 690 F.2d 234, 237, 238 (D.C. Cir. 1982); *see*

13

*also Am. Postal Workers*, 707 F.2d at 559-60 (explaining that "the impact of a rule has no bearing on whether it is legislative or interpretative" and that "interpretative rules may have a substantial impact on the rights of individuals," and collecting cases).  Notwithstanding the impact that ATF's current interpretation may have had on Plaintiffs' ability to import non-sporting firearm components, the Open Letter remains an interpretive rule not subject to notice-and-comment requirements under the APA.

> ### C.    ATF's shift in interpretation of § 925(d)(3) does not render the Open Letter a legislative rule

Plaintiffs generally allege that ATF's change in its interpretation of § 925(d)(3) amounts to an APA violation.  Compl. ¶ 96.  Prior to 2005, ATF construed the statute to permit importation of frames, receivers, and barrels of non-importable long guns so long as they were being imported for repair or replacement purposes only.[18]  ATF's July 2005 Open Letter explained that the government had determined that the statute could not properly be construed to support that exception.   Such a change in interpretation of a statute may be accomplished without notice and comment under the APA.  *See Syncor*, 127 F.2d 94 (noting that an agency may, "without notice and comment," issue an interpretation that "changes a prior statutory interpretation"); s*ee also Davila*, 969 F.2d at 492 ("[A]n agency's change in its reading of a statute does not necessarily make the rule announcing the change legislative.").

_____

[18] As recounted *supra*, prior to 2001, ATF interpreted § 925(d)(3) to allow the importation of non-sporting long gun frames, receivers, or barrels, regardless of the purpose for importation.  To the extent that Plaintiffs' Complaint can be read to challenge the 2001 change in interpretation, a reading Defendants deny, that claim would be barred by the applicable statute of limitations.  *See* 28 U.S.C. § 2401(a) (establishing a six-year statute of limitations for civil actions against the United States).

**D.    There is no inconsistency between ATF's interpretation of § 925(d)(3) and other GCA provisions or ATF regulations**

Plaintiffs also suggest that issuance of the Open Letter violated the APA because in doing so, ATF "re-interpreted . . . all of the regulations and statutes that relied upon ATF's previous interpretation."  Compl. ¶ 97.  To the extent that Plaintiffs are claiming that the Open Letter is inconsistent with 27 C.F.R. § 478.112—and thus an amendment of a prior substantive rule requiring notice and comment[19]—their claim is misplaced.  *See id.* ¶ 29.

As an initial matter, Plaintiffs' reading of § 478.112 is flawed.  Plaintiffs allege that § 478.112 was promulgated "to generally provide for the importation of firearm barrels and only prohibit the importation of certain types of handgun barrels."  *Id.* ¶ 17.  However, subsection (a) of § 478.112 provides:

> No firearm, firearm barrel, or ammunition shall be imported or brought into the United States by a licensed importer . . . unless the Director [of ATF] has authorized the importation of the firearm, firearm barrel, or ammunition.

27 CFR § 478.112; *see also id.* § 478.111 ("[N]o firearm, firearm barrel, or ammunition may be imported or brought into the United States except as provided by this part.").  ATF's regulatory regime is thus premised on a general prohibition against importation of firearm barrels, rather than, as Plaintiffs would have it, "to generally provide" for importation.  Compl. ¶ 17.  The effect of the regulation is straightforward: absent authorization from ATF, no barrel may be imported. It is thus incorrect to allege, as Plaintiffs do, that "there is no provision in the regulation to

---

[19] S*ee Cent. Tex. Tel. Co-op., Inc. v. F.C.C.*, 402 F.3d 205, 211 (D.C. Cir. 2005) ("If a second rule repudiates or is irreconcilable with [a prior legislative rule], the second rule must be an amendment of the first; and, of course, an amendment to a legislative rule must itself be legislative." (alteration in original) (quotation marks omitted)).

prohibit the importation of a barrel, handgun or long gun barrel that had previously been assembled into a NFA weapon or a surplus military firearm." *Id.* ¶ 40.

In any event, there is no inconsistency between § 478.112 and ATF's interpretation of § 925(d)(3).  It is true, as Plaintiffs allege, that under § 478.112(b)(1)(vii)(F), an application to import the barrel of a handgun must contain "an explanation why the handgun is generally recognized as particularly suitable for or readily adaptable to sporting purposes," and that there is no corresponding requirement for applications to import rifle (or other long gun) barrels.[20]  *See* Compl. ¶ 40.  But this additional burden imposed by § 478.112 on a would-be importer of barrels for handguns is not "repudiated by" or "irreconcilable with" the 2005 Open Letter's interpretation of the statute to bar importation of barrels of all non-importable firearms.  S*ee Cent. Tex. Tel. Co-op*, 402 F.3d at 211.  Indeed, it establishes a straightforward proposition: an individual may import a handgun barrel so long as the handgun itself is importable [under § 925(d)(3)], and to obtain a permit to do so the individual must provide ATF with an explanation why the handgun is a "sporting purpose" firearm [as required by § 478.112(b)(1)(vii)(F)].  Plaintiffs' claim that ATF impermissibly "re-interpreted" § 478.112, apparently premised on the theory that the Open Letter somehow modified that regulation, is meritless.

---

[20] This provision is an artifact of ATF's pre-2001 interpretation of § 925(d)(3), which, as discussed *supra*, allowed for the importation of barrels for non-sporting long guns (*i.e.*, disallowed barrels for non-sporting handguns).

Plaintiffs also allege that the Open Letter is "clearly in contradiction with" another provision of the GCA, 18 U.S.C. § 922(r), and its implementing regulation, 27 C.F.R. § 478.39. Compl. ¶¶ 41-45, 47, 211.[21]   Section 922(r) states, in pertinent part:

> It shall be unlawful for any person to assemble from imported parts any semiautomatic rifle or any shotgun which is identical to any rifle or shotgun prohibited from importation under section 925(d)(3) of this chapter as not being particularly suitable for or readily adaptable to sporting purposes . . . .

18 U.S.C. § 922(r).  This provision prohibits individuals from circumventing the importation restrictions applicable to non-sporting semiautomatic rifles and shotguns by assembling them from imported parts.  To implement § 922(r), ATF promulgated 27 C.F.R. § 478.39, which provides, in pertinent part:

> No person shall assemble a semiautomatic rifle or any shotgun using more than 10 of the imported parts listed in paragraph (c) of this section if the assembled firearm is prohibited from importation under section 925(d)(3) as not being particularly suitable for or readily adaptable to sporting purposes.

27 C.F.R. § 478.39(a).  Paragraph (c) of § 478.39 then lists twenty firearm components that are "imported parts" for purposes of paragraph (a).

According to Plaintiffs, section 478.39 allows "firearm parts, in general, and firearm barrels, specifically, [to be] importable for the assembly into semiautomatic rifles or shotguns." Compl. ¶ 42.  Plaintiffs are mistaken.  Nowhere does the regulation state, as Plaintiffs would have it, that firearm parts are "importable" for assembly into semiautomatic rifles or shotguns. This is because § 478.39 regulates assembly of firearms, not importation of parts.  *See* 27 C.F.R.

---

[21] As with Plaintiffs' claim concerning 27 C.F.R. § 478.112, this allegation appears to be in support of a claim that ATF's Open Letter violated the APA by substantively amending, without notice and comment, the cited statutory and regulatory provisions.

§ 478.39.  The fact that ATF's regulation permits an individual to use up to ten imported parts in assembling a non-sporting semiautomatic rifle or shotgun does not mean that the regulation affirmatively grants the individual permission to import those parts.[22]  The Open Letter is not "clearly in contradiction" with § 922(r) and § 478.39.  Plaintiffs' allegation is baseless and should be rejected by the Court.

In sum, the APA does not require an agency to provide notice and an opportunity to comment whenever it issues an interpretation of a statute that it is charged to administer.  When it issued the Open Letter in 2005, ATF was providing just such an interpretation.  ATF did not purport to be amending or otherwise changing any of its preexisting regulations, nor did it do so.  Finally, the fact that ATF's interpretation differed from its previous readings of § 925(d)(3) cannot serve to convert the Open Letter to a substantive rule.  Plaintiffs' allegation that ATF violated the APA by issuing the Open Letter without notice and comment pursuant to 5 U.S.C. § 553(b) is without merit and should be dismissed.[23]

---

[22] Section 478.39(c) does list frames, receivers, and barrels as "imported parts," of which no more than ten may be used to assemble a shotgun or semiautomatic rifle.  Again, these parts may have been permissibly brought into the United States under previous interpretations of the GCA, and may thus be available for use in assembly of shotguns and semiautomatic rifles, but are nonetheless currently prohibited from import under § 925(d)(3).

[23] Defendants note that even if the Court were ultimately to find that ATF committed a procedural violation of the APA, it would have been harmless, since, as demonstrated *infra*, ATF is precluded by the text of the statute from adopting the interpretation of § 925(d)(3) that Plaintiffs desire.  *See Sheppard v. Sullivan*, 906 F.2d 756, 762 (D.C. Cir. 1990) (finding harmless an agency's failure to provide notice and comment where agency's approach was "the only reasonable one" and that therefore plaintiff "could not have been harmed by the absence of public participation").

## II.    ATF'S DENIAL OF BERO'S PERMIT APPLICATIONS WAS NOT ARBITRARY AND CAPRICIOUS UNDER THE ADMINISTRATIVE PROCEDURE ACT

In addition to the notice-and-comment claim, Plaintiffs also assert an APA challenge to the merits of ATF's 2005 interpretation of § 925(d)(3).  Compl. ¶¶ 210-213 (citing ATF's alleged "arbitrary and capricious" decision in 2005).  Plaintiffs do not challenge a specific application denial as arbitrary and capricious, which would ordinarily render this claim unripe. S*ee Utility Air Regulatory Group v. EPA*, 320 F.3d 272, 278 (D.C. Cir. 2003) ("Courts are obliged to avoid 'entangling themselves in abstract disagreements over administrative policies[] and . . . to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" (alteration in original) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).  However, to the extent that the Complaint can be construed to rely upon ATF's 2011 denial of Bero's November 2010 import applications as the vehicle to make this challenge, [24] Defendants will respond to Plaintiffs' allegations as a claim for judicial review of ATF's denial under 5 U.S.C. § 706(2)(A). *See Eagle Broad. Grp. v. F.C.C.*, 563 F.3d 543, 551 (D.C. Cir. 2009) (holding all agency action, whether formal or informal adjudication or formal or informal rulemaking, "subject to arbitrary and capricious review under § 706(2)(A)").

---

[24] *Cf.* Compl.  ¶ 214 (alleging "arbitrary and capricious" interpretation "in that Plaintiffs are now denied their ability to import, manufacture, and possess these barrels").  Plaintiffs' allegations concerning their ability to "manufacture and possess" certain gun barrels are misplaced in this context.  Nothing in the Open Letter or § 925(d)(3) regulates the "manufacture" or "possession" of firearms.  Insofar as Plaintiffs' claims allege a denial of any right to manufacture or possess firearms barrels, they lack merit and should be dismissed.

**A. Bero's applications would have been denied under ATF's pre-2005 interpretation of § 925(d)(3), and the decision is therefore not an arbitrary and capricious departure from ATF's precedent**

Plaintiffs allege that ATF's denial of Bero's applications was arbitrary and capricious because it is "completely opposite to the actions and stated interpretation taken by Defendants since 1968." Compl. ¶ 211. It is unclear what "actions and stated interpretation" Plaintiffs refer to, but, in any event, Bero's applications would have been denied under ATF's pre-2005 interpretation of § 925(d)(3). In Block 10 of the applications he submitted, Bero indicated that his "specific purpose" for importing the barrels was resale, not repair or replacement. *See* AR at 27, 30. As ATF stated in its April 2001 FFL Newsletter, only those applications that indicated "repair or replacement" in Block 10 were eligible for approval. *Id.* at 5. In other words, ATF would have denied Bero's import applications because the barrels in questions were from non-importable firearms and did not fall within the then-extant repair or replacement exception. Thus, ATF's interpretation eliminating that exception has no bearing whatsoever on ATF's decision to deny his applications, and the denial is not, as Plaintiffs would have it, "completely opposite to the actions and stated interpretation taken by Defendants since 1968." Compl. ¶ 211. Accordingly, Plaintiffs' claim that the denial was arbitrary and capricious because ATF acted "completely opposite" to its prior practice is baseless.

**B. ATF's interpretation of § 925(d)(3) is not erroneous**

Whether ATF has correctly interpreted the Gun Control Act in denying Bero's applications is assessed under the "familiar two-step framework" established in *Chevron USA Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). *See Sherley v. Sebelius*, --- F.3d ---, 2011 WL 1599685, at *5 (D.C. Cir. 2011). Under that framework, "[i]f the Congress has directly spoken to the precise question at issue, then [the court] must 'give effect to the

20

unambiguously expressed intent of Congress [Step One]; if instead the statute is silent or ambiguous with respect to the specific issue, then [the court] defers to the administering agency's interpretation as long as it reflects a permissible construction of the statute [Step Two]." *Id.* (quoting *Chevron*, 467 U.S. at 842-43) (internal quotation marks omitted). ATF's interpretation of § 925(d)(3) is not only a reasonable one—and thus permissible under the APA—but it is compelled by the plain text of the provision. Thus, its denial of Bero's applications was not arbitrary and capricious. *See Chamber of Commerce of U.S. v. FEC*, 76 F.3d 1234, 1235 (D.C. Cir. 1996) (explaining the analytical overlap between inquiry into agency's statutory interpretation and arbitrary-and-capricious review under the APA)

1.    *Chevron* **Step One: Congress has Spoken Directly to the Precise Question at Issue**

All statutory construction inquiries "begin with the language of the statute. The first step 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). The "particular dispute" here is whether § 925(d)(3) allows ATF to permit importation, for repair or replacement purposes, of frames, receiver, or barrels of non-importable long guns. The text of the statute does not allow for such an interpretation.

a)    **The text of § 925(d)(3) has a plain and unambiguous meaning**

As discussed, section 925(d)(3) begins by providing that ATF shall authorize for import a firearm that satisfies three conditions: (1) it is not a NFA firearm; (2) it meets the "sporting purpose" test; and (3) it is not a surplus military firearm. The language added by the FOPA goes on to provide that "in *any* case where the Attorney General has not authorized the importation of

the firearm pursuant to this paragraph, it shall be unlawful to import *any* frame, receiver, or

barrel of such firearm which would be prohibited if assembled."  18 U.S.C. § 925(d)(3)

(emphases added).  Thus, the FOPA language covers "any" case in which ATF has denied

import authorization because a firearm fails to satisfy all three of the criteria listed above.  For

such a non-importable firearm, the statute prohibits the import of "any" frame, receiver, or

barrel, and nowhere does the text suggest, let alone explicitly state, any purpose-based exception.

The word "any" is ordinarily understood to have an "expansive meaning, that is, one or some

indiscriminately of whatever kind."  *Dep't of Housing & Urban Dev. v. Rucker*, 535 U.S. 125,

131 (2002) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)) (internal quotation marks

omitted); *see also, e.g.*, *Ford v. Mabus*, 629 F.3d 198, 206 (D.C. Cir. 2010).[25]  The plain text of

§ 925(d)(3) therefore prohibits the importation—for whatever purpose—of every frame, receiver,

---

[25] Defendants recognize that the Supreme Court has identified circumstances when the term
"any" should be read in context and given a less expansive meaning than usual.  *E.g.*, *United
States v. Palmer*, 3 Wheat. 610, 631 (1818) (Marshall, C.J.).  For instance, in *Small v. United
States*, the Court held that the term "any court," as used in 18 U.S.C. § 922(g)(1), was limited to
domestic courts.  544 U.S. 385, 394 (2005).  It reached that conclusion based on the presumption
that Congress "ordinarily intends its statutes to have domestic, not extraterritorial, application,"
*id.* at 388-89, and because reading the statute to include foreign courts would create anomalies
that Congress could not have intended, *id.* at 391-92.  Similarly, in *Nixon v. Missouri Municipal
League*, the Court read the term "any entity" in a federal preemption statute to exclude public
entities, since to do otherwise would have led to "strange and indeterminate results" that would
have raised federalism concerns over a state's authority to regulate its own political inferiors.
541 U.S. 125, 133 (2004).  Here, there are no analogous background considerations, such as
extraterritorial application or federalism that would compel a narrower reading of "any frame,
receiver, or barrel."  *See also* OLC Memorandum, AR at 19-20.

Moreover, the interpretation urged by Plaintiffs would not, as in the above-cited cases, narrow
the application of § 925(d)(3) to a subset of frames, receivers, or barrels that could have been
defined in advance.  Instead, their proffered interpretation could conceivably be applied to every
frame, receiver, or barrel that was being imported, depending on its intended use for repair or
replacement.  Such a reading is entirely untethered from the text and cannot reasonably be
extrapolated from Congress's use of the phrase "any frame, receiver, or barrel."

or barrel of every firearm that does not meet its importation criteria. Where Congress has declined to legislate an exception to a statute, a federal agency charged with administering that statute "may not . . . create an additional exception on its own." *Natural Res. Def. Council v. EPA*, 489 F.3d 1250, 1259-60 (D.C. Cir. 2007); *see also Indiana Michigan Power Co. v. Department of Energy*, 88 F.3d 1272, 1276-77 (D.C. Cir. 1996) (vacating Department of Energy decision when its reading of statute was "not an interpretation but a rewrite"); *Natural Res. Def. Council, Inc. v. Costle*, 568 F.2d 1369, 1377 (D.C. Cir. 1977) (rejecting EPA's attempt to exempt certain "point sources" from statute's permit requirement and noting that "[c]ourts may not manufacture for an agency a revisory power inconsistent with the clear intent of the relevant statute."). The language of the statute cannot be read to contain the "repair or replacement" exception as Plaintiffs allege.

   **b)**  **Resort to the legislative history cited by Plaintiffs is unnecessary and, in any event, that legislative history is not inconsistent with ATF's interpretation**

   Hoping to create ambiguity where none exists, Plaintiffs seize upon isolated quotations from the FOPA's legislative history in an attempt to show that the importation prohibition was intended to apply solely to non-importable handgun components. Compl. ¶¶ 15, 37-38. Though courts sometimes consider legislative history in the first step of their *Chevron* inquiry, *see, e.g.*, *Nat'l Cable & Telecomm. Ass'n v. FCC*, 567 F.3d 659, 663 (D.C. Cir. 2009), reliance on such materials is neither necessary nor justified in this case. A court confronted with "superficially unambiguous" language may review legislative history to "shed new light" on congressional intent, but the D.C. Circuit has made clear that the "bar is high" before it should engage in such an exercise. *Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291, 298 (D.C. Cir. 2003). Indeed, resort to "legislative history to constrict the otherwise broad application of a statute indicated by its

text" is undertaken "rarely." *Id.* (citing *Am. Scholastic TV Programming Found. v. FCC*, 46 F.3d 1173, 1180 (D.C.Cir.1995)). There is no reason or need for the Court to examine pieces of legislative history cherry-picked by Plaintiffs when the text of the statute could not more plainly support the interpretation proffered by ATF.

Even were the Court to consider the legislative history cited in Plaintiffs' Complaint,[26] it would not alter the conclusion that § 925(d)(3) has a "plain and unambiguous meaning with regard to the particular dispute in the case." *Barnhart*, 534 U.S. at 450. This is true for the simple reason that the cited materials are not inconsistent with ATF's interpretation.[27] These statements indicate that certain members of Congress may have harbored concerns over the importability of barrels of so-called "Saturday Night Special" handguns, which are not importable under the GCA.[28] But the FOPA addresses those concerns, since a prohibition

---

[26] Although their citations to the congressional record do not match the floor statements they quote, Plaintiffs appear to rely upon the following pieces of legislative history: H.R. Rep. No. 99-495, at 15, 17 (1985); 131 Cong. Rec. 18,195 (1985) (statement of Sen. Kennedy); *id.* at 17,001 (statement of Sen. McClure); *id.* at 18,184 (statement of Sen. Matsunaga); 132 Cong. Rec. 6843 (1986) (statement of Rep. Volkmer).

In addition, Plaintiffs have mischaracterized the context in which Sen. Kennedy made his statement. He was speaking about a provision in the FOPA to restrict the interstate sale of assembled handguns, and not about the importation of component parts. This statement thus has no bearing on the importation issue alleged by Plaintiffs.

[27] Plaintiffs' reliance on letters from Sen. McClure and ATF Director Higgins that postdate the enactment of FOPA should be rejected. Compl. ¶ 17. Such "post-enactment legislative history is not only oxymoronic but inherently entitled to little weight." *Cobell v. Norton*, 428 F.3d 1070, 1075 (D.C. Cir. 2005); *see also General Instrument Corp. v. F.C.C.*, 213 F.3d 724, 733 (D.C. Cir. 2000) (finding "no value" in a post-passage letter from U.S. Representative).

[28] The term "Saturday Night Special" refers to relatively inexpensive, easily concealable handguns that tend to be associated with use in criminal activity. *See, e.g.*, *Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 836 (10th Cir. 1998) (citing *Kelley v. R.G. Indus.*, 497 A.2d 1143, 1158 (1985)).

against importing Saturday Night Special barrels falls within § 925(d)(3)'s general prohibition against importing "any" barrel of a non-importable firearm.  Moreover, as previously discussed, at the time the FOPA was being debated, at most two non-NFA and non-surplus-military firearms had been deemed non-sporting by ATF.  *See* 1989 Study, *supra* n.13, at 4-5.  There may have thus been less cause for an individual legislator to be concerned over the importability of barrels for long guns which, in fully assembled form, were generally importable at that time.  Nothing in the cited floor statements is contradicted by the FOPA language actually passed by Congress, and Plaintiffs themselves admit that concern over Saturday Night Specials was "only one of many purposes" for which the FOPA was enacted.  Compl. ¶ 15.  Plaintiffs cannot rely on isolated excerpts from the legislative history to engraft a radically different interpretation upon a provision whose meaning is otherwise unambiguous from its plain text.

The decision of the Supreme Court in *New York v. FERC* further illustrates the flaw in Plaintiffs' argument.  535 U.S. 1 (2002).  The Federal Power Act of 1935 (FPA) was enacted, in part, to close the "*Attleboro* gap," named for a Supreme Court decision which held that wholesale sales of electricity were beyond the regulatory reach of the States.  *See Pub. Utils. Comm'n v. Attleboro Steam Co.*, 273 U.S. 83 (1927).  The statute did more, however, by authorizing federal regulation of not only wholesale sales, which were at issue in *Attleboro*, but also of energy transmissions in interstate commerce, which were not at issue.  *New York*, 535 U.S. at 21.  The Federal Energy Regulatory Commission (FERC) read the FPA to give it authority to regulate certain retail energy transmissions.[29]  The State of New York objected to

---

[29] The provision in question gives FERC jurisdiction over "the transmission of electric energy in interstate commerce and . . . the sale of electric energy at wholesale in interstate commerce." 16 U.S.C. § 824(b).

FERC's regulation of those retail energy transmissions, contending that the FPA's legislative history demonstrated that Congress meant nothing more than to close the *Attleboro* gap.  The Court acknowledged "numerous statements in the legislative history indicating that the 1935 Congress intended to do no more than close the '*Attleboro* gap.'"  *Id.* at 20.   However, the Court held that even if the *Attleboro* decision had "catalyzed the enactment of the FPA," the concerns identified in *Attleboro* "[did] not define the outer limits of the statute's coverage" in the face of clear statutory text to the contrary.  *Id.* at 21.  In this case, even if the identified legislators' concerns over Saturday Night Specials can be said to have "catalyzed" the passage of FOPA, which is not evident, those concerns cannot artificially limit § 925(d)(3)'s application to something less than "any frame, receiver, or barrel," as its plain text dictates.

Although legislative history may "shed light" on congressional intent, it may not rewrite statutory text.  Plaintiffs' reliance on isolated floor statements and the House Report is an attempt to go beyond illuminating congressional intent, and is instead an effort to rewrite "any frame, receiver or barrel of a [non-importable firearm]" as "only a frame, receiver, or barrel from a Saturday Night Special handgun."  As the *New York* Court stated, the text is a court's "clearest guidance" as to a statute's meaning, 535 U.S. at 23, and there is no reason to deviate from that text in this case.

For further evidence of the defect in Plaintiffs' legislative history argument, the Court need look no further than the plain text of § 925(d)(3).  The FOPA amendment prohibits the importation of "any frame, *receiver*, or barrel" of a non-importable firearm.  18 U.S.C. § 925(d)(3) (emphasis added).  Whereas a frame or barrel is a standard component in either a handgun or a long gun, a receiver is almost always associated with long guns.  *See* JOHN WALTER, GREENHILL DICTIONARY OF GUNS AND GUNMAKERS 421 (2001) ("Receiver:  A term

often applied to the frame of a rifle, especially if it 'receives' the bolt or breech-block.");

STEINDLER'S NEW FIREARMS DICTIONARY 209 (1985) ("RECEIVER that part of a rifle or

shotgun (excepting hinged frame guns) that houses the bolt, firing pin, mainspring, trigger group,

and magazine or ammunition feed system. The barrel is threaded into the somewhat enlarged

forward part of the receiver, called the receiver ring. At the rear of the receiver, the butt or stock

is fastened.  In semiautomatic pistols, the frame or housing is *sometimes* referred to as the

receiver." (emphasis added)).

　　"[W]here Congress has used technical words or terms of art, it [is] proper to explain them

by referring to the art or science to which they [are] appropriate.  In the absence of contrary

indication, we assume that when a statute uses such a term, Congress intended it to have its

established meaning." *Alabama Power Co. v. EPA*, 40 F.3d 450, 454 (D.C. Cir. 1994) (internal

citations and quotations omitted).  Had Congress intended to prohibit the importation solely of

handgun components, rather than both handgun and long gun components, it would be

counterintuitive for it to include the term "receiver"—predominantly applicable to long guns—in

the FOPA amendment.  Instead, Congress's inclusion of that term evinces an intent to ban the

importation of component parts from all non-importable firearms, regardless of type.

　　In enacting the FOPA, Congress "spoke directly" to the question at issue: is every frame,

receiver, or barrel of a firearm that does not meet the importation criteria of § 925(d)(3)

prohibited from importation, regardless of whether it is imported for repair or replacement?

Congress answered that question in the affirmative and left no ambiguity in rendering "unlawful"

the importation of "any frame, receiver, or barrel."  In its 2005 Open Letter, ATF "[gave] effect

to the unambiguously expressed intent of Congress," and this conclusion is "the end of the

matter."  *Chevron*, 467 U.S. at 842-43.  The Court thus need not reach step two of the *Chevron*

27

inquiry.  Plaintiffs' claim that ATF arbitrarily and capriciously "misinterpreted" the statute should be dismissed.

### 2.    *Chevron* Step Two: ATF's interpretation of § 925(d)(3) is a permissible construction of the statute

Only if the Court finds § 925(d)(3) "silent or ambiguous with respect to the precise question at issue" need it perform the second step under *Chevron*.  As discussed above, Defendants submit that Congress spoke directly to the question at issue, and that there is accordingly no need to reach *Chevron* step two.  However, should the Court decide the statute is ambiguous, it must determine whether ATF's denial of Bero's applications is "based on a permissible construction of the statute."  *Nat'l Rifle Ass'n of Am., Inc. v. Reno*, 216 F.3d 122, 127 (D.C. Cir. 2000) (quoting *Chevron*, at 843).  In doing so, ATF's interpretation of the statutory language must be given "substantial deference."  *Id.*

Under this deferential standard, there can be no doubt that ATF's denial of Bero's applications is based on a permissible construction of § 925(d)(3).  To argue, as Plaintiffs do, that the statute must be read to include an unwritten exception would unduly contort the plain meaning of the provision's language.  Furthermore, by flatly prohibiting importation of components of non-importable firearms, ATF's interpretation limits the ability of individuals to circumvent the import restrictions applicable to assembled firearms; it is thus "'rationally related to the goals of' the statute" to restrict access to prohibited weapons.  *Village of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 660 (D.C. Cir. 2011) (quoting *AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 388 (1999)).

In short, even if the Court finds the terms of § 925(d)(3) ambiguous, there can be no question that ATF's construction of the statute is a "permissible" one.  Under either step of the

28

*Chevron* analysis, ATF's denial of Bero's permit applications should be upheld, and Plaintiffs'

claim that ATF arbitrarily and capriciously "misinterpreted" the statute should be dismissed.

## III.    PLAINTIFFS' CONSTITUTIONAL CLAIMS LACK MERIT

In Counts 5 through 8 of their Complaint, Plaintiffs make various constitutional

challenges based on the Fifth Amendment.  Although these claims are not clearly defined,

Plaintiffs appear to contend that ATF's interpretation of § 925(d)(3) violates the Due Process

Clause, that § 925(d)(3) is impermissibly vague and overbroad, and that ATF's denial of Bero's

applications violates the Takings Clause.  All of these claims fail.

### A.    Plaintiffs' claims under the Due Process Clause are meritless

Insofar as Plaintiffs are contending that ATF failed to satisfy due process in adopting its

2005 interpretation of 925(d)(3) because it did not provide notice and comment, *see* Compl. ¶¶

320, 327-30, that claim fails for the same reasons as the APA claim.  Moreover, the Supreme

Court has held that the Due Process Clause of the Fourteenth Amendment "does not grant to

members of the public generally a right to be heard by public bodies making decisions of

policy."  *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 283-84 (1984) (citing *Bi-*

*Metallic Investment Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) (Holmes, J.)).

And, to the extent that Plaintiffs suppose they occupy a special position based on their past

conduct, the Supreme Court has squarely rejected that argument as well: "When government

makes general policy, it is under no greater constitutional obligation to listen to any specially

affected class than it is to listen to the public at large."  *Id.* at 287.  In issuing the 2005 Open

Letter, ATF no more violated the Due Process Clause of the Fifth Amendment than it did the

APA.

Plaintiffs also allege that § 925(d)(3) is both overbroad and impermissibly vague. Compl. ¶¶ 322, 325.  Plaintiff's overbreadth claim is misplaced: this case does not involve a facial challenge brought under the First Amendment, s*ee Initiative & Referendum Inst. v. U.S. Postal Service*, 417 F.3d 1299, 1312-13 (D.C. Cir. 2005) (citing *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003)), nor could it, since importing gun barrels does not amount to speech or expressive activity, and Plaintiffs do not allege otherwise.

As for Plaintiffs' vagueness challenge, it fails for the same reason that their claim of arbitrary and capricious agency action fails: the statute contains clear language prohibiting the importation of non-sporting barrels, frames, and receivers.  Accordingly, there is no merit to Plaintiffs' apparent theory that § 925(d)(3) violates due process because it is not specific enough to enable an "ordinary person to understand what is prohibited" and because it "encourages arbitrary and discriminatory enforcement."  Compl. ¶ 331.  In any event, Plaintiffs cannot on the one hand assert that an ordinary person cannot understand § 925(d)(3) while, on the other hand, themselves contend that the "correct interpretation" of the statute provides a right to import barrels for repair or replacement, *id.* ¶ 215(C).  A statute that is genuinely void for vagueness has no "correct" interpretation.  Similarly, Plaintiffs cannot contend that the alleged vagueness leads to arbitrary enforcement when they have not alleged that ATF has deviated from the importation ban since July 2005.

Finally, Plaintiffs argue that the phrase "barrel of such firearm" is "vague, speculative, and ambiguous" because it is not clear which "firearm" that phrase refers to.  Compl. ¶¶ 36, 322. Again, the relevant language of § 925(d)(3) provides:

> The Attorney General shall authorize a firearm or ammunition to
> be imported or brought into the United States or any possession
> thereof if the firearm or ammunition . . . is of a type that does not
> fall within the definition of a firearm as defined in section 5845(a)

> of the Internal Revenue Code of 1986 and is generally recognized
> as particularly suitable for or readily adaptable to sporting
> purposes, excluding surplus military firearms, except in any case
> where the Attorney General has not authorized the importation of
> the firearm pursuant to this paragraph, it shall be unlawful to
> import any frame, receiver, or *barrel of such firearm* which would
> be prohibited if assembled . . . .

18 U.S.C. § 925(d)(3) (emphasis added). Plaintiffs assert that they cannot determine which of the

three types of firearms contained in what they call the "antecedent clause" of § 925(d)(3) is being

referred to: sporting purpose firearms (importable); NFA firearms (non-importable); and surplus

military firearms (non-importable). Compl. ¶ 36. But Plaintiffs ignore the fact that the clause

directly preceding the clause in which "barrel of such firearm" appears—*i.e.*, the "last

antecedent"—refers not to those three firearm types, but instead to "the firearm" which "the

Attorney General has not authorized the importation of." *See, e.g.*, *Alabama Educ. Ass'n v.

Chao*, 455 F.3d 386, 394 (D.C. Cir. 2006) (explaining and applying the "grammatical rule of the

last antecedent, according to which a limiting clause or phrase . . . should be read as modifying

only the noun or phrase that it immediately follows." (quoting *Jama v. Immigration & Customs

Enforcement*, 543 U.S. 335, 343 (2005)) (internal quotation marks omitted)). Properly read in

relation to the last antecedent phrase, the phrase "barrel of such firearm" means the barrel of any

firearm that has not been authorized for importation pursuant to § 925(d)(3). Moreover, the

language which follows "barrel of such firearm"—specifically, "which would be prohibited if

assembled"—makes entirely clear that the prohibited components must belong to a firearm that

would itself, if assembled, be prohibited from importation. There is no ambiguity, vagueness, or

speculativeness to the challenged phrase.

**B.    This Court lacks jurisdiction over Plaintiffs' takings claim, and, in any event, the claim lacks merit**

Plaintiffs contend that ATF's interpretation of the statute constitutes a government taking of private property.  They allege that ATF has denied "Plaintiffs the ability to import the barrels, effectively removing any viable economic or personal use of their property."  Compl. ¶ 433. Plaintiffs do not specify with any precision which "property" has allegedly been taken.  Nor do they identify a specific instance in which such undefined property has allegedly been taken.  To the extent that the taking in question is premised on the denial of Bero's import applications, however, this Court lacks jurisdiction because the claim is one against the United States for over $10,000, and in any event, the claim is meritless.

**1.    Plaintiffs' takings claim is not properly before this Court**

This Court lacks jurisdiction over Plaintiffs' takings claim.  Because the claim is against the United States and for over $10,000, exclusive jurisdiction lies in the United States Court of Federal Claims.[30]  *See* 28 U.S.C. §§ 1346(a), 1491; *Wisconsin Valley Improvement v. FERC*, 236 F.3d 738, 743 (D.C. Cir. 2001) (finding "exclusive jurisdiction" for takings claim in Court of Federal Claims).

The Fifth Amendment is not offended by the government taking property, but only by the government taking property without providing just compensation.  *Preseault v. ICC*, 494 U.S. 1, 11 (1990).  Thus, "if the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner

---

[30] The cost of the barrels that were denied in Bero's applications well exceeds $10,000  *See* AR at 28 (900 MG-34 barrels at a unit cost of $30 apiece); *id.* at 31 (1,000 Scorpion barrels at a unit cost of $10 apiece); *see also Leveris v. England*, 249 F. Supp. 2d 1, 4 (D. Me. 2003).

'has no claim against the Government' for a taking." *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194-95 (1985) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1013, 1018 n.21 (1984)).[31]    The Tucker Act, which creates jurisdiction in the United States Court of Federal Claims for any claim against the federal government founded on the Constitution, a statute, a regulation, or an express or implied-in-fact contract, provides just such a compensation process.  *See* 28 U.S.C. § 1491(a)(1); *see also Wisconsin Valley Improvement*, 236 F.3d at 744.  Moreover, the government need not provide the compensation in advance or contemporaneously with the taking.  All that is required is a "reasonable, certain and adequate provision for obtaining compensation." *Preseault*, 494 U.S. at 11-12 (quotation marks omitted).  Accordingly, this Court lacks jurisdiction to hear Plaintiffs' claim under the Takings Clause, and it must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## 2.    Even if this Court had jurisdiction, Plaintiffs' takings claim is meritless

Even if the Court had jurisdiction to entertain Plaintiffs' takings claim, the claim would fail.  Plaintiffs assert that by denying Bero's applications to import barrels of non-sporting firearms, ATF has "effectively remov[ed] any viable economic or personal use of their property."  Compl. ¶ 433.  But the barrels in question remain the property of Plaintiffs (to the

---

[31] A plurality of Supreme Court Justices has recognized that "the 'presumption of Tucker Act availability must be reversed where the challenged statute, rather than burdening real or physical property, requires a direct transfer of funds' mandated by the Government."  *Eastern Enters. v. Apfel*, 524 U.S. 498, 521 (1998) (plurality opinion) (quoting *In re Chateaugay Corp.*, 53 F.3d 478, 493 (2d Cir. 1995)).  This case, however, does not present that scenario; Plaintiffs do not challenge a statute that would require a "direct transfer of funds" to the government.  *See Adams v. Hinchman*, 154 F.3d 420, 429 n.9 (D.C. Cir. 1998).

extent they have been purchased from foreign sellers) and have in no way been taken or appropriated by the government.  Plaintiffs are free to possess and use their barrels in the respective countries of export (subject to any limitations pursuant to the local law of those jurisdictions).  *See Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 441 (8th Cir. 2007) (dismissing a takings claim and explaining that a claimant that still owned video gambling machines could "take them to another state (or nation) that allows monitor-vending-machine gambling").

Finally, to the extent that Plaintiffs' takings claim is premised on the previously approved permits or on Plaintiffs' expectation interest in selling non-sporting frames, receivers, and barrels imported from abroad, they lack a property right protected under the Fifth Amendment.  In *Mitchell Arms, Inc. v. United States*, the Federal Circuit held that a firearms importer who "voluntarily enter[s] the firearms import business . . . knowingly plac[es] itself in the governmentally controlled arena of firearms importation under the Gun Control Act," and thus crucially lacks the "right to exclude," which is the "chief and one of the most valuable characteristics of the bundle of rights commonly called 'property.'"  7 F.3d 212, 215-16 (Fed. Cir. 1993).  The *Mitchell Arms* court accordingly concluded that the importer's "expectation of selling its assault rifles in the United States was not [a property right protected by the Fifth Amendment] because it was subject to governmental regulation of firearms importation under the Gun Control Act."  *Id.* at 217; *see also Gun South*, 877 F.2d at 869 (dismissing a takings claim where firearms importer failed to "demonstrate that the [importation denial] will unreasonably impair the value of the rifles").  Plaintiffs' takings claim is nearly identical to the ones held meritless in *Mitchell Arms* and *Gun South* and, in the event the Court decides it has jurisdiction over this claim, it should accordingly be dismissed.

34

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' Complaint should be dismissed in its entirety or, in the alternative, summary judgment should be entered in Defendants' favor on all of Plaintiffs' claims.

Dated: June 30, 2011

Respectfully submitted,

TONY WEST
Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney

SANDRA SCHRAIBMAN
Assistant Director
Federal Programs Branch

 /s/ Andrew Zee
M. ANDREW ZEE (CA Bar #272510)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue NW, Room 7225
Washington, DC  20530
Telephone:  (202) 305-8648
Fax:  (202) 616-8470
Email:  m.andrew.zee@usdoj.gov

*Counsel for Defendants*